# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| STACY M. MEINEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 07042 |
| v. | ) | |
| | ) | Hon. Joan H. Lefkow |
| RIVERSIDE ENTERPRISES, LLC d/b/a | ) | |
| BOSTON BLACKIES AT RIVERSIDE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Stacy Meinen, filed a one-count complaint against Riverside Enterprises, LLC d/b/a Boston Blackies at Riverside ("Riverside"), alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Presently before the court is Riverside's motion for a protective order limiting the scope of the deposition of Bruce Bozich, who is an attorney associated with Riverside. For the reasons below, Riverside's motion is granted in part and denied in part.

## BACKGROUND

In August 2009, Riverside hired Meinen as a hostess at its restaurant, Boston Blackies in Riverside, Illinois. In 2010, Riverside promoted Meinen to manager and, in 2011, Riverside promoted Meinen to general manager. Sometime around July 23, 2011, Meinen notified Riverside that she was pregnant. Riverside subsequently approved Meinen's request to take maternity leave.

On August 1, 2011, John Bozich (for convenience, they will be referred to as John and Bruce), an owner at Riverside, emailed his brother Bruce to about the Family and Medical Leave

Act, specifically asking, "Per our conversation would you review the act and let me know our latitude with respect to the pregnant mgr at Riverside." Dkt. 27-1 at 2. Bruce responded stating,

> Jim was right, the employee has to have worked for you for 12 months or 1,250 hours in the previous 12 months, to be covered by the FMLA. Still, under the pregnancy discrimination act, you can't refer to her pregnancy or childbirth as having anything to do with letting her go. I would let her come back to work for you a couple weeks and then indicate to her that you have too much management since the takeover and you no longer need her services.

*Id*. John forwarded Bruce's response to other managers and an owner at Riverside writing, "Let's proceed as [Bruce] suggests." *Id*. Meinen states that before her termination she found the August 1, 2011 email ("the email") left open on a shared computer in office space also shared by other employees. Riverside contends that Meinen improperly obtained the email by accessing the private email account of another manager without authorization.

On October 3, 2011, five days before Meinen was set to begin her maternity leave, Riverside terminated her employment citing financial reasons. On March 21, 2012, Meinen filed a charge with the United States Equal Employment Opportunity Commission alleging sex and pregnancy discrimination. The EEOC issued a right-to-sue letter on June 13, 2012 and Meinen filed the instant lawsuit on September 4, 2012.[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The protective order may "forbid[] inquiry into

---

[1] Meinen exhausted her administrative remedies and timely filed her Title VII claim within 90 days of receiving a notice of right to sue. *See* 42 U.S.C. § 2000e-5(f)(1); *Conner* v. *Ill. Dep't of Nat'l Res.*, 413 F.3d 675, 680 (7th Cir. 2005).

certain matters, or limit[] the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1)(D).

## ANALYSIS

For purposes of Bruce's deposition, Riverside agrees to waive its claim of attorney-client privilege as to the August 1, 2011 email communication and any reliance by Riverside on this communication in deciding to terminate Meinen.  Riverside seeks a protective order based on attorney-client privilege, however, precluding Meinen from questioning Bruce about communications unrelated to the email correspondence and about communications taking place after her termination.  Since Riverside waives any privilege that it might have claimed as to the email, the issue is merely the scope of the waiver.

Guiding factors regarding the scope of a waiver include "fairness and consideration of the risk that 'a limited disclosure of privileged communications, if permitted, might result in a party's use of privileged communications supporting its position and simultaneous concealment of communications that do not.'"  *Medicines Co.* v. *Mylan Inc.*, --- F. Supp. 2d. ----, 2013 WL 1283480, at *6 (N.D. Ill. Mar. 19, 2013) (quoting *Fort James Corp.* v. *Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.") (applying Seventh Circuit law)); *cf. Appleton Papers, Inc.* v. *E.P.A.*, 702 F.3d 1018, 1026 (7th Cir. 2012) ("Determining whether the undisclosed material ought to be considered with the disclosed material requires a case-specific analysis of the subject matter and adversaries.") (citing Fed. R. Evid. 502 Advisory Committee Notes); Fed. R. Evid. 502(a)

(voluntary disclosure of privileged material in a federal proceeding extends the waiver to undisclosed communications if (1) the waiver was intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) fairness dictates considering the material together).

Riverside contends that any waiver is limited to the email and does not encompass all communications between Bruce and Riverside. Meinen, however, argues that a limited waiver would allow Riverside to disclose favorable pieces of privileged material while withholding unfavorable portions. In this instance, the risk of non-disclosure of unfavorable communications is great for the period from the first conversation or other communication between Bruce and Riverside management about the possibility of terminating Meinen until she threatened to file a charge. On the other hand, once outside counsel were consulted after this date, fairness counsels that confidential communications to Bruce seeking legal advice in his capacity as a lawyer and his responding legal advice should remain privileged. Because the record does not reflect dates of these events, the court will extend the scope of the waiver to the point that outside counsel was consulted.

## CONCLUSION

Riverside's motion for a protective order is granted in part and denied in part. Meinen may depose Bruce Bozich about the email, any communications that he had with Riverside employees or management related to that email, any communications with Riverside regarding Riverside's decision to terminate Meinen's employment because of her pregnancy, and any reliance by Riverside management or employees on Bruce's advice in connection with Meinen's termination for the period of time from the first communication between Bruce and Riverside

4

management about the possibility of terminating Meinen until Riverside contacted outside counsel regarding Meinen's threatened or filed charge. If Riverside claims privilege as to other communications to or from Bruce or other counsel, it must be prepared in each instance to demonstrate that the privilege applies[2] and has not been waived.[3]

ENTER:

Dated: May 31, 2013

*Joan H. Lefkow*

JOAN HUMPHREY LEFKOW
United States District Judge

---

[2]  *See* Fed. R. Civ. P. 26(b)(5)(a)(ii).  Federal common law governs the applicability of attorney-client privilege.  *See* Fed. R. Evid. 501; *Northwestern Mem. Hosp.* v. *Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) ("[T]he evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law[.]").  The classic statement of attorney-client privilege is this:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Mulligan* v. *Vill. of Riverside*, No. 11 C 8200, 2013 WL 1340581, at *3 (N.D. Ill. Apr. 1, 2013) (citing *United States. v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997) (quoting 8 WIGMORE, EVIDENCE IN TRIAL AT COMMON LAW § 2292 (John T. McNaughton, rev.1961))).  Although Wigmore's formulation protects only communications from a client to an attorney, the preferred view is that communications from the attorney to the client are also protected.  *Hollister, Inc.* v. *E.R. Squibb & Sons*, No. 84 C 1987, 1988 WL 129988, at *1 (N.D. Ill. Dec. 1, 1988).

[3]  Under *Upjohn Company* v. *United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981), employees may, without the defeating their employer's privilege, communicate with a corporate client's attorneys as necessary to provide information for the formulation of legal advice.  That does not mean that the client or its attorneys are free to disclose their confidential communications to those employees who are not within the attorney-client relationship.  *See*, *e.g.*, *Denius* v. *Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000) ("The privilege is implicitly waived if the client communicates information to his attorney without the intent that the information remain confidential.").